SNEbu, J.,
delivered the opinion of the court:
The complainant, as administrator of K. L. Wood, deceased, brought this bill in chancery, at Somerville, against the defendant, John S. Burtis, a son and distributee of John Burtis, deceased, and the defendant Dickinson, as guardian of if ary Burtis, a lunatic, to attach the interest of John S. Burtis, who was a nonresident, in a fund held by Dickinson, as guardian of Mary Burtis, his lunatic ward, in which fund the said John S. Burtis owned a reversionary interest of $3,087.50. The- object of the attachment bill was to subject the said reversion of John S. Burtis to the satisfaction pro tanto of the complainant’s debt. The fund in the hands of the said Dickinson, guardian, was the proceeds of the dower interest of the said Mary Burtis, in the lands of her deceased husband, John Burtis, amounting to. the sum of $6,500, and the said John S. Burtis, as the sou and distributee of Ms father, the said John Burtis, owned, as said distributee, at the death of Ms mother, one-fifth interest in said fund, and, as purchaser from other dis-tributees, be owued other shares, altogether amounting to the said sum of $3,087.50. After the complainant had thus acqMred Ms attachment lien upon the funds, other creditors, Smith & Bagland and Bicketts & Salmon, filed their bills, respectively, against the same fund, as creditors of the said John S. Burtis, and acquired their several liens in the order of their respective attachments.
These three causes wyere severally heard and determined at the November term, 1869, wben each complainant had *325 a decree against the defendants for their respective debts, and obtained orders, respectively, upon Dickinson, as guardian, to pay each their debts as then ascertained to be due upon the death of the said Mary Burtis. ■
The complainant in this case vas not a party to either of the other bills, but the three causes were prosecuted independently of each other, though determined at the same term, subject to the priority fixed by law. The debts, as at that term reported by the master, and for which recoveries were severally had, were as follows: The debt of this complainant, Edenton, $375.92, with costs amounting to $60.15; that of Smith & Ragland, $295, and $60.15 costs; and that of Ricketts & Salmon, $2,236.13, and the same-amount of costs. Upon these several recoveries no interest was then demanded, or expressly adjudged to either party, ■and the aggregate amount of the several recoveries being $3,087.50, absorbed to a cent the whole interest of John S. Burtis in the fund, 'giving to each complainant the amount then due him.
Lío further action in either case was taken from the said dates of these several decrees until the March team, 1877, of said court, when it was suggested and proven to the court that the said Mary Burtis, the life tenant, had died on the 26th of May, 1876, and an order was demanded by complainant upon said Dickinson to pay over the amount of complainant's recovery, with interest from the date thereof, the 6th of November, 1869. Chancellor Livingston declined to allow interest from the date of said recovery, hut made an orden? upon Dickinson to pay over the amount, with interest from the 26th of May, 1876, the day of the death of the life tenant of the fund.
The complainant has appealed, and insists that he is entitled to the interest from the date of his recovery, and that the interest follows the decree as matter of law.
A majority of the court hold that the chancellor’s decree was erroneous; that the complainant, being the first attaching creditor, acquired a lien upon the whole fund for his *326 entire debt and interest until paid, and that the other creditors must take according to their priorities, but in subordination to the complainant, whose right to interest was fixed by operation of law from the date of his decree. The result is that the decree will be reversed.
The writer of this opinion, with great deference and respect for the j udgment of his brethren, -is of opinion that the conclusion of tíre learned chancellor was correct, and his convictions make it proper that he should add his own views on the question. Inasmuch as’ the whole fund was absorbed by the three decrees rendered at the same term, without objection, no interest in any judgment can be allowed, except from the date of the termination of the life estate, and for reasons that are, to my mind, very obvious. The equities of each of these parties in the fund were irrevocably fixed by the decree of November term, 1869, by which the complainant recovered this specific share of a specific fund, upon which fund no interest was accruing. The interest that accrued upon the fund from 6tli of November, 1869, to the death of the widow and dowress, of course went to her support and maintenance. It is true that the complainant was not a. party to the other bills, but the lis pendens fixed upon him notice of the other litiga-tions, and at the-sama term at -which the chancellor adjudged his interest in the fund, adjudged the specific interest of the other creditors, which absorbed and exhausted the whole fund. In contemplation of law, the defendant liad notice of all these proceedings. He knew that the fund out of which he was seeking satisfaction was. impounded also by these other creditors, and he sat by and saw the whole fund, absorbed at the November term, 1869, by the solemn decree of the court, by which decree he knew that his right to any interest was cut off and precluded, and yet he makes no objection. It seems, to me that these other creditors, under the facts, have acquired equities which cannot be revoked or disturbed at a subsequent *327 term. The effect of allowing interest now to complainant is to deplete the fan9, and, of course, to diminish the recovery of some of the other 'creditors. The proper time for the complainant to assert his right to interest was at November term, 1869, when he sat by and saw the whole fund absorbed. Tie comes too late to disturb that decree, at March term, 1877, more than seven.years, and more than a dozen terms after the whole fund had been disposed of, and the rights of all the creditors settled. This is not the ordinary case of priorities between attaching creditors, but must be determined upon other and different principles.
But there is another ground upon which tins decree of the chancellor can be sustained. It is a well established principle of law, that whenever the law prohibits the payment of the principal, interest during the time of the prohibition is not demandable. 2 Dall. Penn., 102, 132; 1 Pet. C. C., 524; 4 Dall. Penn., 286.
As against the debtor, John S. Bnrtis, alone, the complainant’s right to interest is clear; but as against this fund thus impounded, under all the facts, no interest could be allowed him pending the life estate. Interest is defined by our statute to be the compensation which may be demanded by the lender from the borrower, or the creditor from the debtor, for the use of money. Code, 1943 [Shannon’s Code, sec. 3492]. It is otherwise defined to be the compensation which is paid by the borrower of money to the lender, for its use, and, generally, by the debtor to Ms creditor for the detention of a debt. As a general rule, interest is allowed whenever a sum of money is not paid at the time it becomes due. Harrison v. Bowie, 4 Jones’ Eq., 261. The sum of money ascertained to be due by an ordinary judgment or decree is due from the rendition thereof, and by statute bears interest from that date. But in this' case the proceeding wras to impound a fund, and was in the nature of a proceeding in rem, directed against the fund in which the debtor had a vested interest to be enjoyed in *328 futuro. The recovery of the complainant as against the fund was not in itself a due debt in the sense of the interest laws, -an'd he had no right to demand it as against the fund until the termination of the life estate, and I think the case falls within the principle cited, that whenever the principal of the debt cannot be paid on account of some legal or judicial prohibition, interest during the time of the prohibition cannot be demanded. I do not deny that in a mere personal decree against the debtor in this case, interest would accrue as a matter of law; but the proceeding being to impound the fund, and the cpmplainant having merged his demand in the fund where the payment of the principal was necessarily prohibited and postponed, and having, in the view of a court of equity, full notice of the antagonistic proceedings by the other creditors, and having, without objection, suffered their hostile rights and equities to intervene, he cannot be permitted to demand interest until his principal is due. I hold that the decree of November term, 1869, was final and irrevocable, and that it could not be modified or disturbed at a subsequent term. The chancellor had fully committed himself by the absorption of the whole fund without complaint; to disturb that decree at a subsequent term, or by any other means than those prescribed 'by law for a direct attack upon it, -would be a proceeding unknown to the forms of law.
Reverse the decree.